————o————

No. 6069.

## VALLE & CO. vs. TEXAS & PACIFIC RY. CO.

### Syllabus.

A city merchant who writes to his country salesman to attend to a shipment of rice which the consignee has refused to receive, thereby authorizes his salesman to receive the rice from the railroad and to sell and deliver it to a third party, when such is the usual course followed by the merchant in other cases and when the salesman is instructed so to do by the merchant.

Appeal from the Civil District Court for the Parish of Orleans, Division "C," No. 106,102. Hon. E. K. Skinner, Judge.

Armand Romain, for plaintiff and appellee.

Howe, Fenner, Spencer & Cocke, for defendant and appellant.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiff avers that in the latter part of January, 1913, they shipped sundry pockets of rice to three persons at various stations along defendants' road for which they hold defendants' bill of lading; that instead of delivering

said rice to the consignees, the defendants delivered same to a third person, without petitioner's knowledge or consent, by reason of which they have lost said rice worth $124.76, for which they ask judgment against the defendants.

Defendants admit having received said rice, having given the bills of lading, and having transported the rice to destination, but it alleges that the consignees having refused to accept the rice, they delivered the same to a third party designated by the plaintiffs.

There was judgment for plaintiffs and defendants have appealed.

The evidence is that one F. Lemoine was employed by plaintiffs as broker, with headquarters at Cottonport, to go around the country and sell rice, coffee, and sugar for them on a commission; that he sent in orders to the plaintiffs for the rice sued for herein; that plaintiffs shipped the rice, and the consignees refused to accept it; that thereupon the defendants notified plaintiffs, as is their custom, that the rice was remaining in the depot uncalled for, that storage charges were accumulating and asking for disposition of the goods.

One of the plaintiffs testified: "As a general rule, we do not immediately answer those things, because we usually try to get the broker to resell those goods." Upon this occasion the plaintiffs wrote to F. Lemoine the following letter dated February 26, 1913, about one month after the shipment, viz: "Positively let us know by return mail, if you are attending to the shipment which we are having controversy about. We received notice this morning from the R. R. Agent that the goods for T. Prevot were still in depot, refused, and there is demurrage charges accumulating on shipments to Maillet and Perrino. We would thank you to please let us hear from

you by return mail, as to whether you are giving these accounts attention or not, as we want to make settlement with you just as soon as we receive our pay from them."

It is evident from the tenor of this letter that there had been previous correspondence between the plaintiffs and Lemoine concerning this rejected rice.

One of the plaintiffs again testifies:

"We got the money from them, (meaning other shipments), but these three shipments we are now suing for, he wrote us for his commission, and of course, when we got such letters from the people who said that they had not ordered the goods, and this man wasn't the right sort of fellow, why we refused to honor his orders. This man had only been traveling around the country and soliciting business for us on commission and when we discovered what sort of man he was, we immediately cut him out, and we wrote to him to get busy on these goods and close them out. He in turn, then wrote us for his commission, he was hungry for it, and he wrote for the commission on the goods, and we wrote back to him, and told him that when he got these matters straightened out, or had sold the goods to some one else, we would settle with him, and that was the last letter we got. Eventually we got settlement from all these parties except the three we are suing for."

Lemoine presented plaintiffs' letter to the railroad agent and obtained delivery of the rice to himself. He never accounted for it to the plaintiffs, who are now trying to hold defendant for its value.

The only question in the case is whether the plaintiffs authorized Lemoine to receive this rice from the railroad. We conclude from the above evidence that he was so authorized. He was plaintiffs' broker and known to be such; his duty was to sell rice for the plaintiffs; while

he would not have been authorized to receive delivery of rice consigned to an original purchaser, plaintiffs testify that when consignees refused to receive delivery, they usually try to get the broker to resell and in this case they gave him orders to do so. Plaintiffs' letter to Lemoine dated Fabruary 26, contains direct instructions to him to attend "to the shipments which we are having controversy about," and to give "these accounts attention," in the usual way, that is, "try to get the broker to resell these goods."

He could not resell these goods and deliver them, unless he himself received them from the railroad. Under all the circumstances we consider that the plaintiffs held out Lemoine as authorized to receive delivery of the rice and that the railroad cannot be charged with negligence in making delivery to him.

The judgment of the lower Court is reversed, and plaintiffs' suit is dismissed at their costs in both Courts.

Judgment reversed.

Opinion and decree, April 20th, 1914.

Rehearing refused, May 4th, 1914.